IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SYDNEY W. MCLELLAN                                      No.  3:16-cv-02193-HZ

                         Plaintiff,                         OPINION & ORDER

       v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                         Defendant.


Nelson Hall
Bennett, Hartman, Morris & Kaplan, LLP
210 SW Morrison Street, Suite 500
Portland, OR 97204

       Attorney for Plaintiff


Janice E. Herbert
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Lars J. Nelson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Sydney McLellan brings this action for judicial review of the Commissioner's

final decision denying his application for Supplemental Security Income ("SSI") under Title XVI

of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42

U.S.C. § 1382(c)(3)). The Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on July 8, 2013, alleging disability as of August 1,

2012. Tr. 207–08.[1] His application was denied initially and on reconsideration. Tr. 133–140,

142–47. On June 15, 2015, Plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ). Tr. 27. On July 31, 2015, the ALJ found Plaintiff not disabled.

Tr. 19. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on ankylosing spondylitis. Tr. 250. He was 34 at the time

of the administrative hearing. Tr. 32. Plaintiff has a 10th grade education and past relevant work

experience as a caregiver. Tr. 251, 17.

///

///

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of August 1, 2012. Tr. 11. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: degenerative disk disease of the lumbar spine, ankylosing spondylitis, sacroliitis, and chronic low back pain. Tr. 12. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 13. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] is able to stand and walk for four hours in an eight-hour workday and is able to sit for four hours in an eight-hour workday. The claimant is limited to an occasional operation of foot controls. The claimant should avoid climbing ladders, ropes, and scaffoldings but can occasionally climb stairs and ramps. The claimant is limited to less than occasional stooping, kneeling, crouching, and crawling.

Tr. 13. Because of these limitations the ALJ concluded that Plaintiff could not perform his past relevant work as a caregiver. Tr. 17. But at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "document preparer" and "telemarketer." Tr. 18. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 18–19.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) failing to admit additional evidence into the record; (2) improperly discrediting Plaintiff's testimony; (3) improperly discrediting the opinion of Plaintiff's treating physicians, including that of his primary care doctor, Charles Stein DO; and (4) improperly discrediting the opinion of Plaintiff's wife as a lay witness.[2] Pl.'s Opening Br. 2, 4, ECF 13. Operating in the background of these arguments, Plaintiff asserts that the ALJ's decision is internally inconsistent and misstates the record. *Id.* at 2–3. Plaintiff's arguments are unavailing and, thus, the Court upholds the ALJ's decision.

---

[2] On page 2 of his Opening Brief, Plaintiff makes the broad assertion that he "takes exception to the ALJ's finding[] . . . [that] Plaintiff has the capacity to perform light work." However, Plaintiff provides no further legal argument as to this claim. Accordingly, I have not addressed it here.

## I.      Omitted Records

Plaintiff asserts that a portion of the record was omitted from the transcript and was not considered by the ALJ or the Appeals Council. Generally, new evidence submitted during an appeal to the district court will not be considered unless "the new evidence is material to a disability determination and . . . a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari,* 276 F.3d 453, 462 (9th Cir. 2001). The ALJ has a responsibility to develop the record and must consider every medical opinion received by the administration. 42 U.S.C. § 423(5)(B); 20 CFR § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). But the burden is on the plaintiff to establish that the ALJ's decision was based on a legal error. *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Shineski v. Sanders*, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Here, Plaintiff has not met this burden.

The Commissioner argues that Plaintiff has not demonstrated he is eligible for relief under sentence six of 42 U.S.C. § 405(g). In this case, however, Plaintiff has not submitted new evidence for the Court's review under sentence six. Pl. Reply Br. 1, ECF 15. Rather, Plaintiff alleges that the ALJ omitted evidence that was submitted two weeks prior to the administrative hearing. Pl. Opening Br. 2. With no support, he states these records would have been exhibits 9F through 13F. *Id.* He goes on to assert in his reply that the evidence would have contained additional symptom testimony, referrals to specialists, and confirmation of his diagnoses. Pl. Reply Br. 2.

Yet, the record does not support Plaintiff's claim that additional medical evidence was not included in his file. At the hearing, the ALJ noted the exhibit list contained only exhibits 1F

through 5F. Tr. 29. Ms. Maynard, Plaintiff's counsel, then informed the ALJ that she submitted additional exhibits thirteen days prior to the hearing. Tr. 29–30. Ms. Maynard confirmed that these records were all Kaiser medical records. Tr. 30. The ALJ admitted the exhibits at the hearing and stated that he would ensure that the documents were included in the claimant's file. Tr. 31. And the exhibit list attached to the ALJ's opinion contains three additional exhibits—6F through 8F—along with the notation "subsequent to hearing." Tr. 24. All three exhibits are Kaiser medical records and thus match the description of the evidence given by Ms. Maynard at the hearing. *Id.* The ALJ's opinion also cites to Exhibit 7F. Tr. 13–17. The record suggests, therefore, that these records were both admitted into the record and used by the ALJ in making his decision. Because Plaintiff has not met his burden of showing that the ALJ committed an error, remand is not appropriate on this issue.

## II. Plaintiff's Testimony

Plaintiff argues that the ALJ did not provide clear or convincing reasons for discrediting Plaintiff's testimony. The Court affirms the ALJ's credibility finding.

In assessing a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*, 674 F.3d at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff has diagnoses of ankylosing spondylitis and sacroiliitis. Tr. 35. Plaintiff testified that his low-back pain associated with these conditions prevents him from working. Tr. 34, 42. Even with assistance from his wife, Plaintiff is unable to perform the duties necessary to continue his most recent work as a caregiver for his mother. Tr. 36, 55.

Plaintiff testified that standing, sitting for long periods of time, walking, and leaning over are uncomfortable because of his conditions. Tr. 43. Lying down is the only position that relieves his pain. *Id.* He also has up to three bad days a week. Tr. 56. When he has a bad day, he is unable to get out of bed and walk. *Id*. While these days can be unpredictable, certain activities—like pushing a mower for ten minutes—are capable of triggering a stretch of bad days. *Id*.

On a typical day, Plaintiff starts his morning by stretching because he wakes up sore. Tr. 49. He usually tries to work on his wife's uncle farm—where they live in exchange for some of Plaintiff's help—and spends the rest of the day alternating between working and lying down. Tr. 49, 55, 59. This work consists of occasionally feeding and watering livestock. Tr. 50. It typically takes him thirty minutes to feed the animals. Tr. 51. He also testified to building porches and gates on the farm for thirty minutes at a time. Tr. 55. Occasionally, he receives help with such tasks from his 15-year-old daughter and wife's uncle. *Id*. After engaging in any of these activities, Plaintiff has to lie down for an hour or so to recuperate. Tr. 52, 55.

The ALJ cites four reasons for finding Plaintiff not credible as to the severity of his symptoms: (1) Plaintiff's earning record and past applications for disability benefits; (2) Plaintiff's activities of daily living; (3) inconsistencies between Plaintiff's allegations of pain and the objective medical findings; and (4) Plaintiff's conservative course of treatment. Tr. 14–15. Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting his testimony. This Court disagrees.

### a.  Work History

Plaintiff challenges the ALJ's use of his limited earnings after his onset date to discount Plaintiff's credibility. The ALJ makes three different assertions about Plaintiff's sporadic work history and his credibility, only two of which Plaintiff expressly challenges. Plaintiff argues that the ALJ erred when he found that (1) Plaintiff's earnings records and disability applications suggest he had been working under-the-table and (2) that earnings after his alleged onset date are inconsistent with total disability. Tr. 14–15. Plaintiff is correct on both counts.

As to Plaintiff's first point, the ALJ attempts to infer from Plaintiff's work history that Plaintiff was working under the table:

"Despite his multiple disability claims, the earnings records indicate that the claimant was working on and off and he earned $5,797.75 in 2006, $10,031.70 in 2009, $15,442.80 in 2010, $17,304.30 in 2011, and $9,075.30 in 2012. The claimant earned over $2,000 every year from 2002 except in 2008. This shows that the claimant is an individual who was bent on being found disabled, even when he was working at SGA level or close to SGA level. This does not enhance the claimant's credibility. This further shows that the claimant may have been working under-the-table in the last several years."

Tr. 14. Such vague reasoning is not specific enough to discount Plaintiff's testimony. *Burrell*, 775 F.3d at 1138 ("To support a lack of credibility finding, the ALJ was required to point to specific facts in the record."). Neither Plaintiff's sporadic work history nor his prior applications for disability benefits have a reasonable connection to the possibility of under-the-table work in the years prior to his current application for benefits. As Plaintiff notes, such reasoning is "purely speculative." Pl. Opening Br. 11. The Commissioner points to other evidence in the record that supports this conclusion: (1) Plaintiff's cultivation of marijuana for himself and his parents, (2) testimony that his parents helped him support himself, and (3) his testimony that he worked on the farm in exchange for rent. Def.'s Resp. Br. 10. But the ALJ does not cite to this evidence in making his assertion, and the Court cannot rely upon reasoning the ALJ did not assert. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The ALJ's reasoning is neither clear nor convincing.

As to Plaintiff's second point, the ALJ emphasizes that Plaintiff had minimal earnings after his alleged onset date from his job caring for his mother. Tr. 14. The ALJ may consider work that a claimant engaged in—regardless of whether that work amounts to substantial gainful activity—in making his disability determination. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ is permitted to take into account income earned after an individual's alleged onset date. *Id.* ("The work . . . that you have done during any period in

which you are disabled may show that you are able to work at the substantial gainful activity level."). But the record here does not support the ALJ's reasoning. First, these earnings, as the ALJ notes earlier in his opinion, do not rise to the level of substantial gainful activity. Tr. 11. And though it is true that the caregiving job did involve "doing dishes, cleaning the house, washing dishes, shopping for groceries, and scrubbing," tr. 15, Plaintiff and his wife both testified that he was no longer able to do such activities without assistance, tr. 54, 63. The earnings records also suggest that Plaintiff's condition deteriorated as Plaintiff went from earning $17,034 in 2011 to earning $9,705 in 2012 and $326 in 2013. Tr. 228, 231. The ALJ, therefore, erred in ignoring the facts in the record that explained his limited work after the alleged onset date. *See Franz v. Colvin*, 91 F.Supp.3d 1209 (D.Or. Feb. 11, 2015) (ALJ erred in discrediting plaintiff for inconsistencies between work history and alleged onset date where "facts in the record . . . sufficiently explain the discrepancy.").

But Plaintiff fails to address the ALJ's overall analysis of Plaintiff's work history. The ALJ found that Plaintiff's sporadic work history and prior applications for benefits suggest that he is not totally disabled but, rather, has no desire or motivation to work. Tr. 14. A lack of motivation to work or an extremely poor work history may cast doubt on a claimant's credibility. SSR 96-7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas,* 278 F.3d at 959. The ALJ correctly finds that Plaintiff has not worked at the level of substantial gainful activity except for recent work as a caregiver for his mother. Tr. 14. Prior to his caregiving job, Plaintiff earned less than $4,000 per year every year except for 2006. Tr. 228. Plaintiff's work history form further reflects that he did not hold a job for more than six or seven months at time. Tr. 264. And, as the ALJ notes, Plaintiff also filed six disability applications prior to his current claim with

alleged onset dates of August 1, 1999, July 1, 2001, January 1, 2003, and July 1, 2007. Tr. 229. These were all years in which Plaintiff had some earned income. Tr. 229–30. And when questioned about his work history at the hearing, Plaintiff explained that he applied multiple times because his back makes it difficult for him to work. Tr. 34. Yet Plaintiff was able to sustain SGA-level work as a caregiver after these disability applications, and his wife's testimony suggests that, with the proper training, he may have been able to perform lighter work during this time. Tr. 62. The ALJ's inference from the record, therefore, is reasonable. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("Where the evidence can reasonably support either affirming or reversing the decision, we may not substitute our judgment for that of the Commissioner.").

While Plaintiff is correct that some of the ALJ's reasoning is flawed, the ALJ's overall analysis of Plaintiff's past work was reasonable. As a claimant's sporadic work history constitutes a clear and convincing reason for discrediting Plaintiff's testimony, the ALJ did not err in discrediting Plaintiff's subjective symptom testimony on this ground.

### b. Activities of Daily Living

Plaintiff contends that the ALJ erred in his analysis of Plaintiff's activities of daily living. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping ... does not in any way detract from his credibility,"

*Barnhart,* 433 F.3d 683, 688 (9th Cir.2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

Here, the ALJ asserts that Plaintiff's activities of daily living discredit his claims of total disability. Tr. 15. He cites to numerous activities in support of his argument. *Id.* But the record as a whole does not support the ALJ's assertion that his activities of daily living are inconsistent with his subjective symptom testimony. Instead, to arrive at his conclusion, the ALJ ignores evidence in the record of Plaintiff's limitations when pursuing these activities.

First, the ALJ correctly asserts that Plaintiff's wife testified that Plaintiff helps her with taking care of their young son. *Id.* But ALJ fails to acknowledge Plaintiff's limitations in doing so. Plaintiff's wife testified that he can only do "as much as he can." Tr. 64. As an example, she said that he is only capable of changing a diaper if their son is already next to him and she brings him the diaper and the wipes. *Id.* In his disability report, Plaintiff also noted that his wife helps him with feeding and changing their son. Tr. 257. His limited assistance in the care of their young son in no way detracts from his allegations of total disability. Instead, the ALJ has mischaracterized evidence in the record to come to this conclusion.

Second, this ALJ again cites Plaintiff's disability function report in stating that Plaintiff is able to cook meals daily, clean, do household repair, shop in stores, paint, and do laundry. Tr. 15 However, at the hearing Plaintiff noted that he is only able to grocery shop for twenty minutes at a time with the assistance of a motorized scooter. Tr. 256. While he did state that he travels by car, bicycle, and public transit, elsewhere he has clarified that he is no longer able to do these

things. Tr. 39, 259. Plaintiff does state he can help around the house by cleaning for a few hours a day and doing laundry for twenty minutes each week, tr. 259, but these allegations are not inconsistent with his assertion that he can only work for thirty minutes at a time before taking an hour to lie down. *See Reddick,* 157 F.3d at 722 (holding that in order to impact a claimant's credibility, the activity has to be "inconsistent with Claimant's claimed limitations").

Third, the ALJ misconstrues the farm work that Plaintiff engages in by including in his analysis a broad description of the physical demands of a farmer: "Being a farmer requires him to lift fertilizer, trimming, stooping and performing all other postural activities." Tr. 15. However, Plaintiff never confirmed he engaged in these activities. Tr. 51. Rather, Plaintiff provided testimony as to the very limited activities he would help with on the farm. *Id*. Plaintiff's admission that he feeds animals, for example, provided that he would do so using a coffee can— not a heavy bag of feed—for thirty minutes at a time before needing to lie down. Tr. 51–52. Plaintiff testified that he could only push a mower for ten minutes before it would trigger a "bad day." Tr. 56–57. While Plaintiff did admit that he assisted in building porches and gates, he noted that he was only able to do so for about half an hour before needing to lie down. Tr. 55. He also testified that he received help from both his 15-year-old daughter and his wife's uncle in carrying out these tasks. Tr. 55. The only activity that the Plaintiff admitted to without any qualification was "watering." Tr. 50. The ALJ has otherwise grossly mischaracterized the record in his analysis.

Fourth, the ALJ suggests that the activities that Plaintiff "enjoys" are inconsistent with his disability. The ALJ notes that Plaintiff "enjoys fishing" and "reported enjoying hiking, fishing, camping, riding a bike, horseback riding, and going out for a long care ride." Tr. 15. This, too, misstates the record. Plaintiff does assert in his disability function report that his

hobbies include fishing, camping, riding his bike, horseback riding, and long car rides. Tr. 260. However, he noted that he engages in them with limited frequency and that he is unable to engage in these activities without significant soreness the following day. *Id.* On the same form, Plaintiff also included hiking, camping, car rides, and bike rides as activities he was once able to do but can no longer engage in. Tr. 257. In an interview with the Cooperative Disability Investigation Unit, Plaintiff told investigators that "he did not have an angling/fishing license yet, but still enjoys fishing" and that "there is a creek just down the road that he heard is good fishing and would like to give a try." Tr. 428. But mere enjoyment of an activity infrequently engaged in is not clear or convincing evidence sufficient to discredit Plaintiff. *Garrison v. Colvin* 759 F.3d 995, 1016 (9th Cir. 2014) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than resting in bed all day.").

Finally, the ALJ argues that the Plaintiff's disability is inconsistent with Plaintiff's cultivation of marijuana. Tr. 15. At the hearing, Plaintiff stated that he grows at least four marijuana plants aquaponically for himself and his parents. Tr. 45. But there is little additional information anywhere in the record as to what this work entails, and the ALJ did not inquire further at the hearing. But given the extent of the evidence in the record as to Plaintiff's general limitations in engaging in any activity, the ALJ's argument is not supported by substantial evidence. Presumably, he has the same physical limitations growing marijuana that he does with the farming activities he engages in.

A review of the record shows that the ALJ misconstrued the limitations Plaintiff clearly testified to in carrying out his daily activities. With limitations, these activities are consistent with his symptom testimony. Accordingly, the ALJ has erred by not providing sufficient

evidence to support his finding that Plaintiff's daily activities are inconsistent with his alleged limitations. This reason is neither clear nor convincing.

### c. Additional Grounds

There are two additional arguments the ALJ puts forth in questioning Plaintiff's credibility: (1) inconsistencies between the medical record and Plaintiff's allegations and (2) Plaintiff's conservative treatment. Plaintiff does not expressly challenge either, and both constitute clear and convincing reasons for discounting Plaintiff's credibility. *See Batson,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Parra,* 481 F.3d at 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

Instead, Plaintiff asserts that the ALJ erred in relying on a version of the record that is not consistent with the "content or tone of the record." Pl. Opening Br. 12 (citing *Reddick,* 157 F.3d at 723). Plaintiff claims the ALJ erred by failing to mention that no doctor has found evidence of malingering, that Plaintiff has tried to ease his pain with many different medications, and that his financial situation has prevented him from seeking alternative treatment. *Id.* at 13. Plaintiff offers no additional legal argument. He merely asserts that these do not suggest he has "no motivation to work." *Id.* at 13.

The ALJ provides a detailed summary of the medical findings in his credibility analysis. Tr. 15. In doing so, the ALJ acknowledges the evidence that supports and contradicts Plaintiff's claim. For example, the ALJ notes that Plaintiff has a flattened lumbar spine and limited range of motion and tenderness in his back. Tr. 15. But he also emphasizes that the diagnostic tests often show normal or mild findings. *Id.* The ALJ also correctly noted that there was no agreement

among physicians as to the cause of Plaintiff's back pain. *Id.* While lack of support from the medical records cannot be the sole basis for finding Plaintiff's symptom testimony not credible, it is permissible when there are additional grounds under which to question his credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). Given the ALJ's other findings as to Plaintiff's credibility, the ALJ could properly take into account the lack of objective evidence when discounting Plaintiff's testimony as to the severity of his pain.

Further, in assigning error to the ALJ's credibility analysis, Plaintiff does not clearly challenge his finding that Plaintiff's treatment was conservative. Contrary to Plaintiff's assertions, the ALJ acknowledges Plaintiff's limited success with medication and other treatments in his discussion of the medical evidence. Tr. 15–16. While the record suggests that Plaintiff could not afford physical therapy, Tr. 499, Plaintiff also stated—without explanation— that he was not engaged in any structured exercise or interested in any non-pharmacological approaches to pain management. *Id*. Dr. Garofolo, a psychologist, indicated first-line approaches to pain management had not been tried. *Id*. As the Commissioner points out, Plaintiff's decision not to seek additional forms of treatment "is powerful evidence regarding the extent to which [a claimant is] in pain." Def. Resp. Br. 14, ECF 14 (citing *Burch,* 400 F.2d at 681). This is a clear and convincing reason for discounting Plaintiff's credibility.

While the Court does not uphold all of the reasons the ALJ provided for discounting Plaintiff's testimony, there is substantial evidence supporting the ALJ's decision. *See, e.g., Batson,* 359 F.3d at 1197 (affirming the ALJ's credibility determination even though one of the reasons provided by the ALJ was based on an assumption not confirmed by the record). The Court affirms the ALJ's decision to discount Plaintiff's credibility.

### III.  Medical Evidence

Plaintiff contends that the ALJ erred by improperly discrediting the opinions of Plaintiff's treating physicians and ignoring the weight of the medical record as a whole. Pl. Opening Br. 7. Plaintiff more specifically argues that the ALJ improperly discredited the opinion of Plaintiff's primary care physician, Charles Stein, DO, by "failing to provide the necessary reasoning" and relying on a misinterpretation of the record. *Id.* at 15. This Court affirms the ALJ's decision to give Dr. Stein's opinion partial weight.

Opinions regarding the ultimate issue of disability are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 426 F.3d 1211, 1216 (9th Cir. 2005).

### a.  Opinion of Dr. Stein

Dr. Stein has been Plaintiff's primary care doctor since April 4, 2012. Tr. 430. On April 10, 2012, Dr. Stein first diagnosed Plaintiff with chronic nonmalignant pain and disorder of the lumbar spine. Tr. 318. He noted that Plaintiff experienced leg weakness and had a limited range of motion in his back, low back pain, and an antalgic gait. Tr. 319. In subsequent appointments, Dr. Stein continued to note Plaintiff's low back pain as well as his limited range of motion in his

back. Tr. 322, 334, 471, 522.  Dr. Stein also noted Plaintiff reported difficulty sitting or standing for more than 30 minutes to an hour. Tr. 333, 337.

Dr. Stein provided two letters in support of Plaintiff's application. In his 2013 letter, Dr. Stein indicated that Plaintiff "is unable to sit, stand or walk for any extended amount of time before needing to change positions or lay down." Tr. 468. He also stated Plaintiff is unable to bend at the waste or lift more than 10 pounds at a time. *Id.*

In his 2015 letter, Dr. Stein stated that Plaintiff suffers from low back pain that radiates to both hips and down his legs. Tr. 430. He said that there was no agreement among Plaintiff's examining physicians as to the cause of his pain but all agree that an additional etiology is likely at work. *Id.* As a result, Plaintiff has a working diagnosis of ankylosing spondylitis. *Id.* Dr. Stein noted that pain medications, other than medical marijuana, have been largely ineffective in providing pain relief. *Id.* He found that Plaintiff can engage in physical activity but not without dramatic increases in pain such that he becomes non-functional for a day or more. Tr. 431. He noted that lying down is Plaintiff's primary method of pain relief, which is consistent with taking pressure off his spine. *Id.* He opined that Plaintiff could not engage in a full forty-hour work week, though a four-hour day might be possible if Plaintiff is permitted breaks as needed, lifts very little weight, and has and the ability to sit and stand. *Id.* Even under such circumstances, Dr. Stein noted Plaintiff is likely to call in sick one day a week. *Id.*

The ALJ assigned partial weight the opinion of Dr. Stein. Tr. 16. He gave three reasons for this finding. First, the ALJ found that Dr. Stein's opinions are not supported by the medical records, which "did not reveal more than mild findings." *Id.* Specifically, the ALJ found that the medical record did not document sufficient medication use or treatment to support Dr. Stein's contention that Plaintiff would miss more than one day of work per week. Tr. 17. Second, the

ALJ discounts Dr. Stein's opinion because the work restrictions he gives were largely based on Plaintiff's subjective complaints. Tr. 16. Third, he found Dr. Stein's opinion is inconsistent with Plaintiff's daily activities. *Id*.

The ALJ erred in concluding that Dr. Stein's opinion conflicts with Plaintiff's activities of daily living. Tr. 16–17. Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim*, 763 F.3d at 1162. As discussed in Part II(b) of this opinion, the ALJ erred in his discussion of Plaintiff's activities of daily living. He provides a similar—if not more cursory—analysis of these activities here. Tr. 16. This reason, therefore, is neither clear nor convincing.

But the Ninth Circuit has held that an ALJ may reject a treating physician's opinion if premised on a claimant's subjective complaints, which the ALJ had already properly discredited. *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989); *but see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). As discussed above, the ALJ has not erred in his overall credibility finding. *See supra* Part II.  Like in *Tommasetti*, where a treating physician's records were largely reflective of the plaintiff's reports of pain, 533 F.3d at 1041, here, too, Dr. Stein's report is reflective of Plaintiff's own allegations. *Compare* Tr. 430 (noting that lying down is his primary source of relief and that he can engage in physical activity for short bursts but may be non-functional for a day or more) and 468 ("He is unable to sit, stand, or walk for any extended period of time before needing to change positions or lie down.") *with* Tr. 43 (noting that standing, sitting for a long period of time, walking, and leaning over are uncomfortable and lying

down is "the only spot that don't hurt.") and 56 (describing bad days when Plaintiff overdoes it physically). Indeed, the medical records show that Plaintiff reported these limitations to Dr. Stein on multiple occasions. Tr. 333, 337 (patient reports difficulty with standing and relief when lying down).

The ALJ also discounts Dr. Stein's opinion because it is inconsistent with the objective findings in the record. The degree to which an acceptable medical source opinion is based on objective facts, particularly in the form of medical signs and laboratory findings, plays a role in weighing the medical evidence. 20 CFR §§ 404.1527(c)(3); 416.927(c)(3). The ALJ may discredit a physician's medical opinion if it is inconsistent with the physician's medical records. *Tommasetti*, 533 F. 3d at 1041; *see also Jensen v. Comm'r Soc. Sec. Admin.*, 2:16-cv-1428-KJN, 2017 WL 2654852, at *5 (E.D. Cal. June 20, 2017) (holding that the ALJ reasonably gave the plaintiff's treating physician little weight where the medical record showed only mild to moderate clinical findings). He is not required to "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by the clinical findings." *Bray*, 554 F.3d at 1228.

Here, the ALJ found that Dr. Stein's opinion was "not supported by the objective findings" as "the diagnostic findings did not reveal more than mild findings." Tr. 16. The record supports this conclusion. Tr. 323 (notes negative bloodwork and signs of inflammation in sacroiliac area on X-ray); 399 (X-ray shows unremarkable lumbar spine and mild bilateral sacroiliits); 421 (X-ray shows normal cervical spine); 485 (MRI shows mild degenerative changes and disk herniation in lower lumbar spine). Dr. Stein also does not provide support for most of the limitations in his opinion. Tr. 430. Rather, he sets out certain limitations—such as a four-hour workday and the need to call in sick one day a week—that are not clearly supported by

the objective or clinical findings in the record or discussed in Dr. Stein's letter. Tr. 431. Instead, such limitations appear to be based on Plaintiff's self-report and tests within Plaintiff's control. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected the opinion of a physician who "relied only on [plaintiff's] subjective complaints and on testing within [plaintiff's] control."). It was reasonable, therefore, for the ALJ to give partial weight to Dr. Stein's opinion.

ALJ has provided two clear and convincing reasons for giving Dr. Stein's opinion partial weight that are supported by substantial evidence. In doing so, the ALJ did not err in his treatment of Dr. Stein's opinion, and this Court affirms his finding.

### b. Treating Physicians

Plaintiff also asserts that the ALJ has improperly discredited Plaintiff's treating physicians by ignoring their opinions and failing to provide specific, legitimate reasons for doing so. The ALJ errs when he rejects a medical opinion by ignoring it. *Garrison,* 759 F.3d at 1012–13. "The Secretary, however, need not discuss all evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)). Plaintiff is correct that the ALJ did not acknowledge Plaintiff's failed trials with various medications. But the record is inconsistent and vague as to Plaintiff's past physical therapy treatment and ability to afford it now. *Compare* 480 *with* 599. And the ALJ correctly notes both that Plaintiff is not taking prescription medications and is "not interested in having . . . structured exercise, or [a] non-pharmacological approach to manage his pain." Tr. 430, 499.

Plaintiff also does not point to any instance in the ALJ's decision where the ALJ has ignored or discredited the opinion of a treating physician. Instead, Plaintiff cites the portions of

the ALJ's opinion where the ALJ summarizes the record in formulating Plaintiff's RFC. *See* Pl.

Opening Br. 7–9 & Tr. 15–16. The section of the opinion to which Plaintiff refers appears to give

full weight to the opinions of Plaintiff's providers and the record as a whole. The ALJ does not,

as Plaintiff asserts, misconstrue the medical record or ignore probative evidence, which generally

reflects a lack of consensus in the source of Plaintiff's pain and mild objective diagnostic

findings. Tr. 430, 484 (for lack of consensus) & 323, 399, 421, 485, 546, 548 (for mild or

unremarkable findings). Further, Plaintiff's analysis here does not show that the ALJ ignored any

acceptable treating medical providers. Instead, the Plaintiff cites to the records from a

radiologist, a nurse practitioner,[3] and a psychologist and rheumatologist who both only examined

Plaintiff once. Without more, this argument is without merit.

## IV.    Lay Witness Testimony of Ashley Gee

Plaintiff also argues that the ALJ erred in assigning limited weight to the testimony of

Plaintiff's wife, Ashley Gee. The ALJ provides three reasons for discrediting Ms. Gee: (1) that,

like the claimant's allegations, her testimony was not corroborated by the objective evidence; (2)

her lack of medical training; and (3) that Ms. Gee is not an unbiased witness because of her

relationship with Plaintiff. Tr. 17.  While the ALJ has erred in discounting Ms. Gee's testimony,

this error was harmless because her testimony does not describe any limitations outside those

described by Plaintiff.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's

ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at

1114.  The ALJ must give reasons "germane to the witness" when discounting the testimony of

---

[3] The records show that Kevin Probst is a nurse practitioner. Tr. 325. Nurse practitioners are considered lay witnesses, and the Plaintiff does not allege that the ALJ improperly considered his lay witness testimony. 20 CFR §§ 404.1513(a), 416.913(a) (For claims filed prior to March 27, 2017, nurse practitioners are not acceptable medical sources); SSR 06-03p.

lay witnesses. *Valentine,* 574 F.3d at 694. The ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

First, the ALJ found that "by virtue of the relationship with the claimant, Ms. Gee cannot be considered a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." Tr. 17. However, the Ninth Circuit has held that bias "in the abstract," such as a close familial relationship, is not a germane reason to discredit a lay witness. *Valentine*, 574 F.3d at 964; *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) ("[T]he fact that a lay witness is a family member cannot be grounds for rejecting his or her testimony."). An ALJ may not rely solely on characteristics common to all spouses to reject lay testimony. *Valentine*, 574 F.3d at 694. Ms. Gee's affection for Plaintiff is not a germane reason to reject her testimony, and the ALJ has erred in doing so on this ground.

Second, the ALJ also discredited Ms. Gee's testimony because of her lack of formal medical training. Tr. 17. Specifically, the ALJ discounts her testimony as to Plaintiff's pain, weakness in his leg, and the frequency of his bad days. *Id.* But the regulations instruct ALJs to consider testimony from "non-medical sources" who have an opportunity to observe the claimant. 20 CFR §§ 404.1513(d)(4), 416.913(d)(4); *see also Lucier v. Colvin*, EDCV 12-2049

RNB, 2017 WL 3597383, *1 (C.D. Cal. July 21, 2014) ("A lay witness's lack of medical training does not disqualify him from proffering a probative opinion about the severity of a claimant's impairments and his ability to work."). Disregarding such evidence "violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Dodrill*, 12 F.3d at 919. (citing *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987)). Here, too, the ALJ has erred.

Plaintiff also challenges the ALJ's finding that her testimony conflicts with Plaintiff's ability to engage in household chores and farm work. Inconsistency between the plaintiff's daily activities and the testimony of a lay witness is a specific and germane reason for rejecting lay witness testimony. *Carmickle,* 533 F.3d at 1164. As noted above, however, the ALJ did not properly consider this evidence. *See supra* Part II(b). This is not, therefore, a germane reason for rejecting Ms. Gee's testimony.

The ALJ also found that Ms. Gee's testimony was not consistent with other evidence in the record. He found both that "it, like the claimant's allegations, is simply not consistent with the preponderance of the opinions and observations of doctors in this case." Tr. 17. In this circuit, inconsistency with the medical evidence is a considered a germane reason for discounting the testimony of lay witnesses. *Bayliss,* 427 F.3d at 1218. However, it is not enough that the medical records do not fully corroborate the testimony of the lay witnesses. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by the medical evidence in the record."). Here, in assigning Ms. Gee's testimony little weight, the ALJ broadly states that Ms. Gee's testimony is not consistent with medical evidence. Tr. 17. The only specific testimony the ALJ finds in conflict with the record is her observations of Plaintiff's leg pain. *Id.* But the record supports Ms. Gee's testimony. Tr. 318,

325, 498.  This accordingly does not constitute a germane reason for discounting her testimony and is an error.

However, failure to provide germane reasons to reject lay witness testimony is harmless when the rejected testimony describes the same limitations as properly-discredited claimant testimony and "the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony". *Molina* , 674 F.3d 1004, at 1122; *see also Colton v. Colvin*, Case No. 3:15-v-01962-CL, 2016 WL 7015669, at *5 (D.Or. Sep. 28, 2016) (Even though the Commissioner conceded that "the ALJ failed to give germane reasons for rejecting [a lay witness's] testimony regarding symptom allegations," the error was harmless because it did not "describe any additional limitations beyond those described by [the plaintiff]" and the plaintiff's subjective testimony was properly discredited). Both Ms. Gee and Plaintiff said that he can help with their son under limited circumstances Tr. 64 & 257. Both testified he can engage in activity for 30 to 45 minutes before needing to lie down for some time. Tr. 55 & 64–65. Both said he has bad days a few days a week where he doesn't leave bed or the couch. Tr. 56 & 64.  They both noted he has difficulty standing and his legs "give out." Tr. 43, 62, & 498. This testimony is substantially similar to that offered by Plaintiff and properly discredited by the ALJ. *See supra* Part II. Accordingly, any errors the ALJ made in rejecting Ms. Gee's testimony were harmless.

**V.    Record as a Whole**

Plaintiff argues that the ALJ's decision misstates the record. He provides a list of four examples in support of this argument: (1) the ALJ's discussion of Plaintiff's mental impairments; (2) the ALJ's assertion that Plaintiff has a history of marijuana abuse; (3) the ALJ's use of anecdotal evidence in discussing Plaintiff's farm duties; and (4) the ALJ's omission of the fact that Plaintiff's fifteen-year-old daughter assists him in performing his daily activities. As

examples three and four are discussed above in Part II, I will only discuss Plaintiff's first two arguments here.

The ALJ's discussion of Plaintiff's mental impairments, though it may misstate some of the record, has no bearing on the ultimate nondisability determination. *Molina*, 674 F.3d at 1111 ("[W]e may not reverse an ALJ's decision on account of an error that is harmless."). And Plaintiff does not attempt to argue that these impairments were severe. Thus, even if the ALJ did err, the error was harmless.

The ALJ's assertion that Plaintiff has a history of marijuana abuse also does not amount to an error. As the Commissioner notes, marijuana is still a Schedule I controlled substance under federal law. Def. Resp. Br. 15. It is not clear whether Plaintiff had a medical marijuana card from the State of Oregon, as was required at the time he was using it for pain relief. He testified that Kaiser—where he received most of his medical treatment—did not allow the use of medicinal marijuana. Tr. 43–44. Moreover, had the ALJ erred in characterizing his marijuana use as substance abuse such an error would have been harmless. The ALJ did not use it to discount any of the evidence in the record, so it has had no bearing on the outcome of his claim.

## VI.    Inconsistencies within the ALJ's opinion

Finally, Plaintiff also argues that the ALJ's opinion is internally inconsistent. Specifically, he points to the ALJ's finding that ankylosing spondylitis and sacroiliitis are severe impairments and the ALJ's discussion of the severity of the symptoms from those impairments. As the Commissioner points out, Plaintiff's argument suggests that the ALJ was required to find that the symptoms of his condition were so severe as to be disabling simply because the ALJ found that the condition was a severe impairment. Def.'s Resp. Br. 16. But "[s]tep- two . . . 'is a de minimis' screening device used to dispose of groundless claims." *Webb,* 433 F.3d at 687

(quoting *Smolen,* 80 F.3d at 1279). "Severe" is a term of art which connotes only that an impairment has more than a minimal effect on the ability to perform basic work activities, not a specific degree of functional impairment. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).   The ALJ's step five determination that any limitations caused by these impairments are not severe enough to amount to a total disability is therefore not at odds with his earlier determination that these conditions are severe enough to cause some limitations. The ALJ's opinion was not internally consistent and does not amount to an error.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this __3__ day of __Nov_____, 2017

MARCO A. HERNÁNDEZ
United States District Judge